Good morning. I'm John Rhodes from the Missoula Office of the Federal Defenders of Montana. I represent Salvador Avila. I intend to spend the bulk of my argument on the erroneous modified categorical analysis here, but I wanted to start at the end of the district court case with the unreasonable sentence. Mr. Avila received a sentence of 12 years and 5 months for an illegal reentry offense. Let me just back up a minute. Do you now – are you conceding that the bulk of the case is covered by the Ambrose-Ambrose case? Yes. I represented Jose Ambrose, and I would agree the decision in that case controls here, although I also agree the – or I would also contend that the Ambrose decision conflicts with other law within the circuit. But in terms of the facts here, the Ambrose case controls. Back to the unreasonableness of the sentence. The unreasonableness is best demonstrated by the revocation sentence. After giving Mr. Avila a sentence of 10 years and 5 months for his illegal reentry offense, the district court judge had him immediately returned to the revocation proceedings and gave Mr. Avila an additional 2 years, resulting in a sentence of 12 years and 5 months. And he ordered the revocation and underlying offense sentences to run consecutive. And if you look at the explanation offered by Judge Haddon, it's a one-size-fit-all, nothing particularized to Mr. Avila. He basically read a rote paragraph that could apply in any revocation proceeding and imposed 2 more years of time. The defense objected to the length of the sentence. And at that point, Judge Haddon gave a somewhat individualized explanation of the sentence. And this is at ER 174 and 175. And in the judge's explanation, the proof's in the pudding. The judge said that the additional 2 years was warranted because Mr. Avila had violated and had breached the trust of the district court in Montana and Nevada. Yes, Mr. Avila breached the district court of Nevada's trust, but he was not on supervised release pursuant to his sentence from Montana. Yet the district court in Montana said, well, you breached my trust, so that's a reason to punish you for the revocation violation. And I think that shows that what the district court was doing with the revocation sentence, the 2 more years, was just further punishment for the illegal reentry offense. That in and of itself shows the unreasonableness of the overall sentence. I want to focus on the 16-point enhancement under 2L1.2 of the guidelines for the California offense. Shepard, as we all know, is the most recent Supreme Court decision on the modified categorical approach. And Shepard emphasized the primacy of the defendant's role in the documents that the later court is going to rely on to determine if there should be an enhanced sentence. And Shepard talked about plea documents. It said that the documents to be reviewed should be a transcript of a plea quality, a written plea agreement. There's a document in the record. I'm not sure where it appears. It's dated August 25th, 1986, the Perry Court in the State of California, and seems to be a judgment. It is a judgment that this court is, that the defendant is guilty of that being the sale of heroin. So why isn't that the end of it? It's the judgment I believe you're referencing. Is that ER-150? I'm not talking about the abstract judgment. Yeah, the abstract. I understand we could argue about that, but this is a different document. Yes. In the excerpts of records are both the abstract judgment and the judgment itself. So why isn't the judgment dispositive? That's where you go to Shepard, which talked about plea documents. It didn't talk about judgments specifically. That's when we don't know what he was convicted of. But here it says quite clearly what he was convicted of. And the reason that's an unreliable document, that it's equivocal, it's not unequivocal, it's not conclusive, it doesn't meet the rigorous standard, is because the transcript of the sentencing, which obviously the defendant is present, his presence is acknowledged on the record. There, if you look at the transcript, the district court or the court that's sentencing Mr. Avila in 1986 in California does not say you're being sentenced for the sale of heroin. But the judgment says that. I mean, in most of these cases, you're trying to substitute for the fact that the judgment doesn't say it. The judgment says you're convicted for controlled substances. You're convicted for section such and such. But when the judgment says what you were convicted of, what's the problem? Because that doesn't have the defendant's acknowledgment. It doesn't have his consent. Because the ultimate question is what was he convicted of. And when you start relying on the plea, I have much more problems in the other direction. When you're – when the judgment doesn't say what you're convicted of, and you're trying to infer what he was convicted of from what he pled to, he could plead to something, but it could not be what he was convicted of. But when we know what he was convicted of, what does it matter what he said? Because it's the defendant's plea, his admission, his acknowledgment that provides the unequivocal factual basis. And here, yes, the written judgment does say that. The oral pronouncement of sentence, which is at ER 159, this is what was said by the judge in court in the defendant's presence, is, quote, it is the judgment of the court that the defendant is guilty of the violation of California Health and Safety Code, section 11352, charged by count one of the complaint. There's nothing mentioned about the sale of heroin or any sort of distribution. It's just the generic California statute, which everyone agrees is over-inclusive. But your real complaint, underlying what you're saying is, well, the judgment might have said the sale of heroin, but what did he care at the time? Because it didn't make any difference. Correct. In two regards, Your Honor. First, what the defendant wants to make sure in the written judgment is, it says the amount of time that the judge said in court, because California, like the law of this circuit, it's the oral pronouncement of sentence that controls. And that's why we would argue that the oral pronouncement of sentence here did not mention the sale of heroin. It mentioned this count one, which is this over-broad, overly-inclusive section of the California Code. And the defendant, who we don't know if he ever even received the judgment, is not going to be concerned about Are you aware of any case in which we've had arguments about abstracts of judgment in Minotaurs and so on, but any case in which the actual literal judgment complied with the federal categorical requirement and it was deemed to be insufficient? I cannot point to that case, but here the facts are distinct, because the oral pronouncement of sentence did not inform the defendant, did not establish a factual basis for the sale or distribution of heroin, whatever it supposedly was. It just talked about this over-inclusive count one charge. The other kind of argument I guess you might have would be the Kawashima case in our circuit or other, the divisible crime problem. Whereas here it didn't really matter. The judge didn't really have to find whether it was heroin or something else, so it was kind of gratuitous whether it was heroin at the time, and therefore it's not divisible. Maybe that's what you're saying. What I'm saying is the charge was this count one, over-inclusive California statute. That's what the judge told the defendant in his presence, you are being convicted of, here's the sentence I'm going to give you. And under Shepard, which focuses on the interaction, the colloquy, the interplay between the defendant and the court to establish the factual basis, that shows that that is the controlling document. It's the transcript where the defendant was involved, the defendant was present. It's not the sentence in judgment that issues after the fact. Let me just ask a question here, and maybe I'm misreading the record, but count one of the charging documents associated with Mr. Vila's California conviction allegedly alleged Mr. Vila sold heroin, excerpt of Record 148. During the plea colloquy, Mr. Vila's lawyer told the sentencing judge that we have truly just a one-count sale here. Why isn't this clear and convincing evidence derived from sources permitted by Shepard enough? Well, on excerpt of Record 148, the first document you referenced, it references heroin, but it references all sorts of actions with respect to heroin, some of which could be the sale, some could be merely the transportation. So that's over-inclusive, and it's inconclusive. All right. What about ER 155? And that was at the sentencing hearing, and that's something his lawyer said. He never stood up and said, I agree with that. The judge never asked him, do you agree with what your lawyer just said, that the factual basis for your guilt is the sale of heroin? It was simply a representation by his lawyer that Mr. Avila never consented to, he never endorsed. In that regard, the government cites the Hernandez-Hernandez case for the proposition that somehow Mr. Avila is bound by what his lawyer told the judge. But if you look at the Hernandez-Hernandez case, that involved a stipulation that detailed the factual basis for a guilty plea, and the defendant agreed, yes, that stipulation is why I'm guilty. That's entirely different than an attorney just getting up and in some sort of summary fashion saying this involves the sale of heroin. Well, I guess I go back to the judgment itself on ER 150, which just found him guilty of the sale of heroin. Why can't we consider that? Because, as I said, that's something that's after the fact. It's not an interplay between the defendant. It wasn't what happened in court with the oral pronouncement of sentence control. All right. Thank you. Your time is up. Counsel. Good morning, Your Honors. I'm Ryan Archer for the United States. Are you involved in a visa with Visa as well? Excuse me? Were you involved in a visa with Visa as well? Yes. You were. So this is a replay. Yeah. I see. Go ahead, Judge. I'm going to have to argue about this first, and if there's time, I do have some questions about that case. Okay. That case is applied to this case. Okay. Well, let me clarify. It was associated with the Ambrose case. Obviously, for obvious reasons, it came out of our office. I wasn't actually handling that case. Mr. Rhodes did indicate he could provide some background to that. But with regard to the modified categorical approach, Judge Berzon, you and I had discussions about Shepard a few months ago in the en banc setting about Shepard. Fortunately, in this case, we have a record of conviction evidence here. Also, fortunately, although we were surprised, we were able to get a transcript from the 1986 California state hearing. And when you look at all of the evidence in this case, we have the transcript, we have the judgment, and we have the abstract of judgment. And each of those show, really, beyond a reasonable doubt, he was convicted for the sale of heroin. I always thought the problems with all the other cases was that there wasn't a judgment that said specifically that judgment was more general. And so I understand that the judgment could be wrong in a whole lot of other things, but it is the judgment. It is what he was convicted of. Whether he was rightly or wrongly convicted of is a different question. But the issue was what was he convicted of. And I guess my only issue is the only thing that's somewhat disturbing about it is that obviously he had no incentive at that time to care. Even if his position was cocaine, he would never have objected. Why did he care? Well, that's true, Your Honor. But I think that's answered by the Snellenberger case out of this Court, which essentially says you have – and here it's not even a court employee or a docket clerk who has a duty to record the actual proceedings, but you actually have the judge here. And that's not really what I'm referring to. What I'm referring to is he could have – California had an overbroad statute. Theoretically, because there was no reason under the California statute to say which it was, unlike, say, a statute that itself was divided either A, B, or C. It didn't really say that. It just said there was a whole bunch of stuff. And since he had no reason to care which it was, whether it was one of the uncovered ones or one of the covered ones, presumably he would simply, you know, just not worry about it because it wasn't a divisible statute. It wouldn't do him any good to say, oh, well, I didn't do heroin. I actually did something else. Your Honor, that is correct. But I think that would be true in almost every predicate offense case. At the time, you're not anticipating later on down the road it may enhance your sentence in a Federal case. So really in every case where you're relying on a predicate offense to enhance a sentence, you wouldn't have any reason at the time to care if it was the sale of heroin or the transport of heroin. It becomes relevant later on. And that's when I think we go back and look at the actual documents. The case out of this Court, United States v. Brunat, says that you may rely on the judgment of conviction for a predicate offense. That says sale of heroin. Obviously, we have the abstract of judgment here as well on ER-162 that corroborates that and says it's a sale of heroin. And while there has been some dispute about relying on abstracts of judgments, the Anaya-Ortiz case seems to rely on that after Snellenberger. And we also have, and if we go back to the sentencing transcript, as Judge Nelson points out, we do have his attorney stating that this was a one-count sale. All of them corroborate the other. Defense counsel points out that you can't just rely on attorney statements. Well, we're not doing that here. And we didn't in the district court. We threw in the sentencing transcript just as corroborative evidence of what exactly happened here. And so I think we think it's clear by any standards that this was a predicate offense established. Let me ask you a couple of questions about Avizo because it is fresh and I find it somewhat troublesome. I don't think the mandate's issued yet, but I'm not sure. And that's this. I don't understand how – if he never left the United States, why is he going in through a border? Why does he have to go through a border check? Essentially, he had been denied entry into one country, and so you reprocess them. The only way to get – Well, really because he's essentially no place at that point. It's like he's on the high seas. Right. And if you come in from the high seas, you are entering the United States. Yes, I believe you do. Well, it seems to me that it's really quite wrong because the question of whether he was ever admitted into Canada really isn't a question. The question is whether he had to enter the United States, and we know he did. He had to go through the border. I think as Ambrise points out, though, you couldn't have charged him with reentering or attempting to. Well, I'm not sure that's true. If somebody comes in through the high seas, you can – they do have to enter, and you can charge them with entering without papers. But when they come in from the high seas, they've actually left. As a matter of law, they've legally left the country at that point. I mean, they don't have to be admitted anywhere to have left the country. It just seems to be an impossible anomaly with your requirement that he go through as if he were entering and then turning around saying, but he wasn't entering. Well, Your Honor, I – He never would have caught him if he didn't have to go through that checkpoint. And you can't go running around checking people who are running around the country. So it obviously was the United States' position that he was entering. Otherwise, he wouldn't have had to go through that checkpoint. Well, I think Your Honor's point is that this is kind of a no-man's land here where you do travel around the border. In the trial, I represented it as this defendant was playing ring around the sweetgrass, basically. I mean, he was circling the border again and again here. And what do you do with a person who has not legally left the country? The brief relies in large part on something that's clearly not right, which this is obviously written before a vis a vis, which is that he had to have been in the country before that. True, but he wasn't found there. So the inference that, of course, he was in the country is really useless to you. The question is where was he found? No. The reason why it's important that he was in the country before is to show that this is not like the cases where you come from a foreign country and you just approach the border station at that point. The point is he had been in the country illegally. But it doesn't matter because the statute turns him where he was found, not where he'd been. Right. But it's important because he was in the country and he never left the country. It's a nice little syllogism, except that it's inconsistent with the fact that you did treat him that way. You treated him as being out of the country, i.e. in no man's land, and therefore having to go through the entry system. He did have to come back through the entry system. But when he comes back through, he basically has a certificate from Canada that says I was denied entry into Canada. And how else are you supposed to bring a person then back into the United States? Well, because he wasn't in Europe. So that's what the inconsistency is. And the one you're saying he never left and the other saying he did leave, that's why we had to let him back in. He was not on United States soil. But he had never legally. I mean, it's a tricky question. But we're talking about a matter of law. And sometimes the law doesn't make logical sense. And this may be one of those cases that logically he was not in Canada. Or logically he was in Canada, excuse me. But as a matter of law, he was not in Canada. Maybe it's one of those legal fictions. But my point is I don't know why we're focusing on whether he was in Canada. Where he wasn't was in the United States. He was outside the United States. He was floating around. Well, the flip side is, as a matter of law, he never left the United States. That's the position. But I'm saying that's inconsistent with the way you're treating him. Anyway, that's what's bothering me about the case. Well, but do you have a problem with Ambrise addressing these issues, though? I understand it does. But one of the reasons I wanted to hear our argument is I wanted to hear your position about this because it did bother me. Well, we do believe, I mean, our position, even without Ambrise, our position is the judge's instruction was right. And the Honda case had discussed that as well, which this court also affirmed, the district court, which was right on point in this case, that you never, as a matter of law, leave the country if you're not admitted into another country. So therefore, you can still be found. But that's demonstrably untrue. If you go take a boat and you go out of the United States and you never get to another country, you still left the country. But as a matter of law, maybe you've left the country because you don't have to be entered into another country. When you're at a border station, you actually have to be admitted entry. That's what you're saying. But in fact, this guy was in the middle. Anyway, it's interesting, a little cut in him. It is. It is an interesting point. And that's why we devoted a ton of briefing to this before Ambrise came out. Right. With regard to the sentence, I do think you need to look at the totality of the circumstances here. The sentences for the supervised release violation and the substantive offense occurred back to back. The record's clear. This defendant kept getting deported. He kept coming back, violating laws of this country, being deported again, coming back and violating more laws. The sentence was reasonable. Okay. Thank you very much. One minute. Thank you, Your Honor. Your insights into the Ambrise decision, that hit the nail on the head. There's an exception now for these unusual set of circumstances that Mr. Avita's case presents and Mr. Ambrise's. It's amazing that you have two of these guys. But anyway, go ahead. The third case coming from Great Falls that's going to come to the Court. And now the Ninth Circuit law says in this particular circumstance, because you didn't enter Canada, that means as a matter of law, you're in the United States. All right. But ultimately, I'm not sure what good it does you, because on my theory it would have to be, therefore, that you were entering, that he was entering. It can't be neither. It has to be one or the other. And there's actually three counts or three charges in the statute that government could charge attempting to enter. The government could have charged reentry for the previous presence in the United States or the found in offense. Right. And in, up until this case, always meant you were through the border, free from official restraints. That's the Ninth Circuit law defining found in until this Ambrise decision. Right. My only point is it's not, I mean, it may in these three cases turn out that they charged the wrong thing. But in any other case, they'll just charge entering and they won't be able to do that. They could do that in this case, Your Honor, possibly. They could have done it to Mr. Ambrise. And the true irony of Mr. Ambrise's case, Mr. Avila, in Mr. Ambrise there was actually a distance between the two border stations. When he was turned back by Canada, if he had picked up somebody who had walked through the Canadian port of entry and driven them to the American border station, Mr. Ambrise under this Court's law in the Ambrise decision would be considered in the United States. The other person would be considered not to be in the United States. They would be in the no man's land that the Court has recognized. Okay. Thank you very much. Thank you, Your Honor. The case of United States v. Avila-Rivera is submitted. And we go to the last argued case of the day, American International Specialty Lines Insurance Company v. Kinder Care.
judges: Farris, Nelson D. W., Berzon